**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JENNIFER NICOLE SMITH

    Debtor

Case No. 3:24-bk-30543-SHB
Chapter 7

**M E M O R A N D U M**

APPEARANCES:    WILLIAM E. MADDOX, JR., LLC
    William E. Maddox, Jr., Esq.
    Post Office Box 31287
    Knoxville, Tennessee  37930
    Attorney for Debtor

    ROBERTSON LAW GROUP
    Philip L. Robertson, Esq.
    555 Marriott Drive
    Suite 315
    Nashville, Tennessee  37214
    Attorney for 21st Mortgage Corporation

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the Court on Motion for Relief from the Automatic Stay and Co-Debtor Stay ("Motion for Stay Relief") filed by 21st Mortgage Corporation ("21st Mortgage") on April 19, 2024 [Doc. 26[1]]. Following preliminary hearings, the Court entered an Order on August 8, 2024, setting a briefing schedule and identifying the issues to be addressed to resolve the Motion for Stay Relief ("August 8 Order") [Doc. 62.]. The parties jointly filed Stipulations on August 23, 2024 [Doc. 67], stipulating fourteen factual statements and the following four exhibits: (1) the Substitute Trustee's Notice of Sale executed on February 27, 2024, and recorded with the Campbell County Register of Deeds also on February 27, 2024 ("Notice of Foreclosure Sale"); (2) an email dated March 5, 2024, from Heidi Shope, Legal Coordinator for 21st Mortgage, to Jamie Cheney, paralegal to Philip L. Robertson, Esquire, Substitute Trustee and counsel for 21st Mortgage ("Successor Trustee"), that includes as attachments the recorded Notice of Foreclosure Sale and a Title Search Report Issued by Chicago Title Insurance Company (collectively, "March 5 Email"); (3) a text message from the Successor Trustee to Ms. Cheney on March 27, 2024 ("Robertson Text")[2]; and (4) an email string dated April 1, 2024, between Ms. Cheney and Ms. Shope ("April 1 Emails"). 21st Mortgage filed its brief in support of the Motion for Stay Relief on August 23, 2024 [Doc. 69]; Debtor filed her brief on September 6, 2024 [Doc. 71]; and 21st Mortgage filed its reply brief on September 13, 2024 [Doc. 72]. Pursuant to Federal Rule of Evidence 201, the Court also takes judicial notice of

---

[1] The following documents are attached as exhibits to the Motion for Stay Relief: (1) a Consumer Loan Note, Security Agreement and Disclosure Statement dated March 18, 2020; (2) a Deed of Trust recorded with the Campbell County Register of Deeds on April 2, 2020; and (3) the Substitute Trustee's Deed executed on April 8, 2024, and recorded with the Campbell County Register of Deeds on April 9, 2024. [*See* Doc. 26.]

[2] Exhibit 3 reflects both sides of the text thread between the Substitute Trustee and his paralegal. The thread from the Substitute Trustee's side reflects that the text was sent at 11:04 a.m., while the thread from his paralegal's side reflects a receipt time of 10:04 a.m. The different times are explained because the foreclosure sale took place in Jacksboro, Tennessee, which is in the Eastern Time Zone, but the Substitute Trustee's office is located in Nashville, Tennessee, which is in the Central Time Zone.

all documents of record filed in this bankruptcy case, including the exhibits attached to the Motion for Stay Relief, on which 21st Mortgage expressly relies and incorporates by reference in its brief.

This matter is now ripe for adjudication.

## FACTUAL BACKGROUND

Debtor and a non-filing codebtor, Jennetta Smith, executed a Consumer Loan Note, Security Agreement and Disclosure Statement ("Note") on March 18, 2020, for the purchase of a 2016 Clayton 60 x 27 Manufactured Home. [Doc. 67 at ¶¶ 1-2; Doc. 26 Ex. 1.]  Debtor and Ms. Smith also executed a Deed of Trust on March 18, 2020, which was recorded with the Campbell County Register of Deeds on April 2, 2020, granting a lien to 21st Mortgage on real property located at 130 Lowood Lane, Newcomb, Tennessee.[3] [Doc. 67 at ¶ 3; Doc. 26 Ex. 2.]

After Debtor and Ms. Smith defaulted under the terms of the Note and Deed of Trust, 21st Mortgage initiated non-judicial foreclosure against the Property and appointed the Substitute Trustee by an Appointment of Substitute Trustee recorded on February 23, 2024. [Doc. 67 at ¶¶ 4-5.]  As part of the foreclosure proceeding, the Substitute Trustee gave proper notice of the foreclosure sale through the Notice of Foreclosure Sale, advising that the foreclosure sale of the Property would occur on March 27, 2024. [*Id*. at ¶ 6, Ex. 1.]  The Notice of Foreclosure Sale, which contained a complete description for the Property, was recorded with the Campbell County Register of Deeds on February 27, 2024; served on Debtor and Ms. Smith; published in accordance with Tennessee law; and provided to 21st Mortgage. [*Id*. at ¶¶ 6-7, Ex. 1.]

Through the March 5 Email, 21st Mortgage notified the Substitute Trustee that it would credit bid up to $68,882.10. [*Id*. at ¶ 8, Ex. 2.]  The Substitute Trustee conducted the sale on

---

[3] The manufactured home and real property are collectively referred to as the "Property."

March 27, 2024, and 21st Mortgage's $68,882.10 credit bid was the sole offer received. [*Id*. at ¶ 10.] After the sale, the Substitute Trustee sent to Ms. Cheney the Robertson Text, which read, "No one showed so to the bank." [*Id*. at ¶ 11, Ex. 3.] As reflected in the April 1 Emails, in response to a status request from Ms. Shope, Ms. Cheney, as representative for the Substitute Trustee, replied to Ms. Shope that "No one showed up to bid – back to 21st!" [*Id*. at ¶ 12, Ex. 4.]

Debtor filed the Voluntary Petition commencing this bankruptcy case on April 3, 2024. [*Id*. at ¶ 13; Doc. 1.] On April 8, 2024, the Substitute Trustee executed the Substitute Trustee's Deed to memorialize the foreclosure sale in favor of 21st Mortgage, and it was recorded with the Campbell County Register of Deeds on April 9, 2024. [*Id*. at ¶ 14; Doc. 26 Ex. 3.] Neither the Substitute Trustee nor Ms. Cheney communicated in any way with any other person, entity, or agency concerning the foreclosure. [Doc. 67 at ¶ 12.]

## PROCEDURAL POSTURE

Through her Chapter 13 Plan filed on April 3, 2024, Debtor proposed to pay an ongoing mortgage obligation to 21st Mortgage in the amount of $650.00 and to cure the $7,800.00 arrearage through monthly payments of $150.00.[4] [Doc. 2 at 2-3.] In its Objection to Confirmation of Chapter 13 Plan filed on April 18, 2024, 21st Mortgage argued that because the Property "was foreclosed at sale concluded on March 27, 2024, prior to the filing of the instant petition . . . , Debtor is not the owner of the Property, and therefore, the Property is not property of the estate." [Doc. 23 at ¶¶ 2, 3.] 21st Mortgage also objected to Debtor's inclusion of its debt

---

[4] Debtor filed an Amended Chapter 13 Plan on July 3, 2024, that does not alter her proposed treatment of the mortgage to 21st Mortgage. [*See* Doc. 43.] Debtor also filed a proof of claim in the amount of $61,667 on behalf of 21st Mortgage, as authorized by Federal Rule of Bankruptcy Procedure 3004 and evidenced by the Notice of Filing dated July 15, 2024 [Doc. 48.] 21st Mortgage attempted to withdraw the claim on July 25, 2024 [Doc. 51]; however, that withdrawal was withdrawn at the Court's instruction on August 23, 2024, with a "full reservation of rights including right to seek amendment of the Proof of Claim [Claim 10], and without waiver or estoppel of any claims or legal positions, including those set forth in [the Motion for Stay Relief and the Objection to Confirmation of Chapter 13 Plan]." [Doc. 68.]

in her Chapter 13 Plan because she "no longer has a legal or equitable interest in the property and . . . lost the ability to reinstate the mortgage, decelerate the debt and resume payments according to the pre-default terms under 11 U.S.C. § 1322(b)." [*Id*. at ¶ 4.]

The Motion for Stay Relief asserts that the stay should be terminated under 11 U.S.C. § 362(d)(1) and (2) for cause and because Debtor does not have equity in the Property and the Property is not necessary for an effective reorganization. [Doc. 26 at ¶¶ 8, 9.] After a hearing held August 7, 2024, on plan confirmation and the Motion for Stay Relief, the Court entered the August 8 Order, directing that the following issue must be addressed to resolve the Motion for Stay Relief: whether the foreclosure sale conducted on March 27, 2024, was final before Debtor filed the petition in this bankruptcy case on April 3, 2024, and specifically whether documentation concerning the March 27, 2024 foreclosure satisfied the statute of frauds before Debtor filed the petition on April 3, 2024.[5] [Doc. 62 at ¶ 2.A.]

In its brief, 21st Mortgage argues that, collectively, the Notice of Foreclosure Sale, the March 5 Email, the Robertson Text, and the April 1 Emails "show an enforceable contract between the [Substitute] Trustee and 21st Mortgage" and constitute a sufficient writing to satisfy the Statute of Frauds such that the foreclosure was finalized pre-petition. [Doc. 69 at 3.] 21st Mortgage also argues that "the finality of the foreclosure sale both prevented the property from becoming property of the estate and even if it did not do that, it prevents the debtor from curing and reinstating the note and deed of trust under section 1322(b) . . . [and] the debtor cannot confirm a plan that attempts to cure and reinstate the mortgage." [*Id*. at 6.]

---

[5] The August 8 Order also included the Court's question of whether, even if the Statute of Frauds was satisfied, the Motion for Relief would be mooted by a successful avoidance action brought by the Chapter 13 Trustee or Debtor under 11 U.S.C. § 544(a)(1) or (3) because the Substitute Trustee's Deed was recorded post-petition. [Doc. 62 at ¶ 2.B.] The Court need not address the avoidance issue because there is no pending adversary proceeding to avoid the Substitute Trustee's Deed by any party and the Motion for Stay Relief is mooted by operation of Tennessee law, as explained below.

Debtor does not address the issue identified by the Court and, instead, argues in her brief that "the creditor has provided zero proof of consideration." [Doc. 71 at 2.] 21st Mortgage replied that the parties' stipulation refutes Debtor's consideration argument. [Doc. 72 at 1.] 21st Mortgage is correct. The parties stipulated: "As a credit bid, the consideration to the debtor in the form of cancellation of the debt [*sic*] occurred contemporaneously with the acceptance of 21 [Mortgage]'s credit bid as the winning sale." [Doc. 67 at ¶ 10.] Because the Court finds that the parties stipulated the existence of consideration in the form of cancellation of the debt by a credit bid, the sole issue concerns finality of the foreclosure sale under Tennessee law, which centers around the associated documentation and whether it satisfies the Statute of Frauds.

**ANALYSIS**

As it relates to this contested matter, the filing of Debtor's bankruptcy case invoked two fundamental bankruptcy provisions. First, the bankruptcy estate was created, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case [wherever located and by whomever held]." 11 U.S.C. § 541(a)(1).[6] Second, the automatic stay of 11 U.S.C. § 362 was imposed, providing "one of the fundamental debtor protections provided by the bankruptcy laws[,]" *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986), by prohibiting certain actions against Debtor, her property, and property of the bankruptcy estate. Thus, to proceed with any action against Debtor, any of her property, or any property of her estate, a creditor must obtain stay relief under § 362(d). Specifically, the Court may modify or terminate the stay for cause under subsection (1) or if no equity exists in the property and it is unnecessary for an effective reorganization under subsection (2). 21st Mortgage argues that it is entitled to relief from the automatic stay here under both provisions

---

[6] The scope of § 541 is intended to be broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983).

because the foreclosure sale was completed pre-petition such that the Property never became property of Debtor's bankruptcy estate.

21st Mortgage is correct, and the law is clear that "[i]f the foreclosure sale of the Debtor's residence became final prior to the commencement of [this] case, then the residence did not become property of the estate and is not protected by the automatic stay." *In re Williams*, 247 B.R. 449, 451 (Bankr. E.D. Tenn. 2000); *see also In re Toney*, 349 B.R. 516, 518 (Bankr. E.D. Tenn. 2006) (holding that a residence sold at a foreclosure sale "divests the debtor of his [or her] interest in the property").  Thus, resolution of this contested matter is dependent on whether the foreclosure sale was final under Tennessee law before Debtor filed this bankruptcy case such that Debtor's interest in the Property was divested pre-petition, in which case it did not become property of the bankruptcy estate.  If the answer is yes, then stay relief is unnecessary because the Property was never property of the bankruptcy estate.  If the answer is no, the Court must determine if cause exists or, alternatively, whether there is equity in the Property and whether it is necessary for a successful reorganization.

As stated by this Court and cited with approval by other courts, "[u]nder Tennessee law, 'the fall of the auctioneer's hammer is not alone sufficient to satisfy the statute of frauds requirement.'  Satisfaction of the statute of frauds, as is necessary under [Tennessee Code Annotated section] 29–2–101 (Supp. 1999), requires a writing which evidences 'an existing and binding contract.'" *In re Williams*, 247 B.R. at 451 (quoting *In re Johnson*, 213 B.R. 134, 136 (Bankr. W.D. Tenn. 1997), *modified after reh'g*, 215 B.R. 988 (Bankr. W.D. Tenn. 1997)); *see also Greer v. Gateley* (*In re Greer*), Adv. Proc. No. 309-0467A, 2010 WL 4817993, at *3 (Bankr. M.D. Tenn. Nov. 22, 2010) ("In Tennessee, the foreclosure was effective upon payment of the consideration and satisfaction of the statute of frauds.").

As it pertains to real property, the Tennessee Statute of Frauds is codified in Tennessee Code Annotated section 29-2-101, which provides:

> No action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

Tenn. Code Ann. § 29-2-101(a)(4). To satisfy the Statute of Frauds, "a writing is sufficient if the terms of the agreement may be understood either from the writing itself or from some other writing connected with it." *Waddle v. Elrod*, 367 S.W.3d 217, 228 (Tenn. 2012) (citing *Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 773 (Tenn. 1972)). "The Statute of Frauds does not require a written contract, only a written memorandum or note evidencing the parties' agreement. Additionally, while the writing required by the Statute of Frauds must contain the essential terms of the contract, it need not be in a single document." *Id*. at 226 (citing *Lambert*, 481 S.W.2d at 773). Furthermore, "even if one or more memoranda are produced sufficiently describing the terms of a parol agreement, the Statute of Frauds also requires that one of the writings be signed by the party to be charged or by some other person authorized to act on that party's behalf." *Id*. (citing Tenn. Code Ann. § 29-2-101(a)(4)).

Numerous Tennessee bankruptcy courts have addressed the question of finality of a foreclosure sale with regard to the execution of a substitute trustee's deed, finding that execution by the substitute trustee constitutes a signature by "the 'party to be charged,' (i.e., the substitute trustee as seller) . . . [that] satisfies the statute of frauds" even though "[t]he recording of the deed [is] not necessary for the finalization of [a] foreclosure sale." *In re Bland*, 252 B.R. 133, 136 (Bankr. W.D. Tenn. 2000) (citing *In re Williams*, 247 B.R. at 452); *see also In re Comer*, No.

13-12148, 2014 WL 917485, at *7 (Bankr. E.D. Tenn. Mar. 10, 2014) (holding that even though the substitute trustee's deed was recorded post-petition, the foreclosure was completed and final pre-petition because "consideration was exchanged and . . . the statute of frauds was satisfied by the preparation and execution of the [substitute trustee's deed] prior to the commencement of the debtor's case"); *In re Johnson*, 213 B.R. at 136 ("Should the parties choose to rely on a deed to meet the statute of frauds writing requirement, such deed must be executed before the statute may be deemed satisfied."). *But see In re Love*, 353 B.R. 216, 218, 223 (Bankr. W.D. Tenn. 2006) (finding that the memorandum of sale, which "contained a detailed description of the property, a handwritten notation of the amount of the highest bid by JP Morgan Chase, and the signature of the attorney crying out the sale" did not satisfy the Statute of Frauds[7] when the substitute trustee's deed was executed post-petition).

21st Mortgage does not dispute that the Successor Trustee did not execute the Successor Trustee's Deed until post-petition, on April 8, 2024. It argues, instead, that the holdings of *In re Williams*, *In re Comer*, and *In re Love* are distinguishable because its collective group of writings, consisting of the Notice of Foreclosure Sale, the March 5 Email, the Robertson Text, and the April 1 Emails, satisfy the Statute of Frauds under the Tennessee Supreme Court's decision in *Waddle*. This Court agrees with 21st Mortgage based on Tennessee's adoption of the Uniform Electronic Transactions Act ("UETA")[8] in 2001 and the Tennessee Supreme Court's 2012 application of the UETA to the requirements of the Statute of Frauds in *Waddle*, 367 S.W.3d at 227-28.

---

[7] The *Love* court found that the facts did not establish that the party against whom enforcement of the contract was sought had signed a writing: "The memorandum of sale . . . could not rise to the level of a binding contract for the sale of real property for this reason; no one other than the attorney who orally cried out the sale signed the document." *Id.* at 223.

[8] The UETA is codified at Tennessee Code Annotated section 47-10-101 *et seq.*

In *Waddle*, the Tennessee Supreme Court summarized the UETA:

> The UETA does not require parties to conduct transactions by electronic means. Tenn. Code Ann. § 47–10–105(a). Rather, the UETA governs "transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Tenn. Code Ann. § 47–10–105(a)–(b). "Transaction means an action or set of actions occurring between two (2) or more persons relating to the conduct of business, commercial, or governmental affairs." Tenn. Code Ann. § 47–10–102(16). Under the UETA:
>
>> (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
>>
>> (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
>>
>> (c) If a law requires a record to be in writing, an electronic record satisfies the law.
>>
>> (d) If a law requires a signature, an electronic signature satisfies the law.
>
> Tenn. Code Ann. § 47–10–107(a)–(d). "Electronic signature" includes "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Tenn. Code Ann. § 47–10–102(8); *see also id*. cmt. 7 ("[T]he mere inclusion of one's name as part of an email message" qualifies as an electronic signature "so long as in each case the signer executed or adopted the symbol with the intent to sign.").

*Id*.

Finding that the parties had intended to finalize their agreement through electronic means so that the UETA applied, the court found that "[p]ursuant to section 47-10-107(c), the emails counsel exchanged constitute a signed memorandum, note, or writing for purposes of the Statute of Frauds." *Id*. at 228. Additionally, even though the defendant had not signed the email, her attorney, acting as her agent, included his typed name at the end of an email confirming settlement terms. *Id.* Such a typed name constituted an electronic signature under the UETA that satisfied the Statute of Frauds. *Id*. at 228-29. In summary, the court acknowledged that "[t]he

UETA, recognizing that all sorts of transactions are now routinely conducted by electronic means on a daily basis, obviates the need for a handwritten signature." *Id*. at 229.

To apply the UETA as codified in Tennessee and applied in *Waddle*, this Court must examine the collection of documents relied on by 21st Mortgage to determine if they meet the requirements of the Statute of Frauds for the foreclosure to have been final pre-petition. Those documents include the Notice of Foreclosure Sale, the March 5 Email, the Robertson Text, and the April 1 Emails.[9] Although this Court expressly finds that the Notice of Foreclosure Sale standing alone would not satisfy the requirements of the Statute of Frauds under the guidance of *In re Love* and *Waddle* and that the Robertson Text does not qualify as a signed writing[10] within the scope of either the UETA or *Waddle*, the Court agrees that the collective documents satisfy the Statute of Frauds under the UETA and *Waddle*.

First, as in *Waddle*, the parties (i.e., the Substitute Trustee and 21st Mortgage, through their agents) "evidenced an intent to finalize the [foreclosure sale] by electronic means" so that the UETA applies. *Id.* at 228. Under the Statute of Frauds, which does not require a single

---

[9] Tennessee Code Annotated section 47-10-108(a) provides that the requirement for a writing "is satisfied if the information is provided, sent, or delivered, as the case may be, in an electronic record capable of retention by the recipient at the time of receipt. An electronic record is not capable of retention by the recipient if the sender or its information processing system inhibits the ability of the recipient to print or store the electronic record." Debtor has not argued that the electronic records of 21st Mortgage are insufficient under section 47-10-108(a), and the Court finds no deficiency in them under the statute.

[10] Even in this age of technology and under the guidance of *Waddle*, the Court does not accept 21st Mortgage's argument that the Robertson Text constitutes a "signed writing." In fact, the Court found limited instances when a court addressed the issue of whether text messages satisfy the Statute of Frauds, and the consensus is that although "signed text messages can suffice as signed writings under the statute of frauds," a signature is still required. *BrewFab, LLC v. 3 Delta, Inc.*, 580 F. Supp. 3d 1201, 1210 (M.D. Fla. 2022) (finding that text messages "expressly identif[ying] [the sender] as the author, guarantor, and signatory of the promise memorialized in the text message" constituted a signature under the UETA as adopted in Florida's Electronic Signatures Act and satisfied the Statute of Frauds); *see also Preston v. Nichols,* 189 N.Y.S.3d 837, 838 (N.Y. App. Div. 2023) ("Initially, 'an e-mail sent by a party, under which the sending party's name is typed, can constitute a signed writing for the purposes of the statute of frauds.' Here, however, not one of the text messages or emails submitted by plaintiff contains a signature block or other electronic signature of defendant. Those communications are therefore 'clearly inadequate, since they were not subscribed, even electronically, by the defendant, who is the party to be charged, or by anyone purporting to act in his behalf.'" (quotations and internal brackets omitted)).

document, *id.* at 226 (citing *Williams v. Buntin*, 4 Tenn. App. 340, 347 (1927)), the essential terms of the foreclosure sale can be found within the collective writings and electronic records. The Notice of Foreclosure Sale, which is an independent writing and incorporated in the March 5 Email as an attachment, reflects the legal description of the Property. The March 5 Email reflects the amount of the credit bid made by an authorized agent of 21st Mortgage, and the April 1 Emails reflect the acceptance of the sale by that same authorized agent of 21st Mortgage.

Second, the collective documents reflect the signatures of the "party to be charged with performance," i.e., 21st Mortgage and/or its agents. The Notice of Foreclosure was signed by the Successor Trustee, who was authorized by 21st Mortgage to serve in that role as well as in the capacity as the attorney hired by 21st Mortgage to conduct the foreclosure sale. Additionally, the March 5 Email was signed electronically by Ms. Shope, who was authorized by 21st Mortgage to make the credit bid on its behalf, and the April 1 Emails likewise were signed electronically by Ms. Cheney in her capacity as the Successor Trustee's agent and by Ms. Shope on behalf of 21st Mortgage, respectively.

Accordingly, under Tennessee law, because there was consideration in the form of the credit bid and the Statute of Frauds was satisfied through the collective documents consisting of the Notice of Foreclosure Sale, the March 5 Email, and the April 1 Emails, the transfer of the Property through the nonjudicial foreclosure sale was final on April 1, 2024, and all rights of redemption or reinstatement were terminated as of that date. Therefore, it is immaterial for purposes of this contested matter that the Successor Trustee's Deed was not executed or recorded pre-petition.

## CONCLUSION

In summary, in light of the UETA as codified in Tennessee and the Tennessee Supreme Court's decision in *Waddle*, the Notice of Foreclosure Sale together with the March 5 Email conveying the credit bid and the April 1 Emails between Ms. Cheney and Ms. Shope collectively suffice under Tennessee law to satisfy the requirements of the Statute of Frauds so that the foreclosure sale was final pre-petition on April 1, 2024. Because Debtor's interest in the Property was divested on April 1, 2024, the Property did not enter Debtor's bankruptcy estate on April 3, 2024. Therefore, the Property, as neither property of Debtor nor the bankruptcy estate, is not subject to the provisions of the automatic stay. Because no stay exists as to the Property, 21st Mortgage's Motion for Stay Relief is moot, and the Court will deny the Motion for Stay Relief by separate order.

FILED: October 15, 2024

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE